878 A.2d 51

M. Diane KOKEN, Insurance Commissioner
of the Commonwealth of Pennsylvania,

v.

VILLANOVA INSURANCE COMPANY,

Mutual Risk Management, Ltd. (MRM), Psychiatrists' Purchasing Group, Inc., American Airlines, Inc., Pulte Homes, Inc., Metro Atlantic Landscape and Turf Association (Malta), Florida Workers Compensation Guaranty Association, Lloyd's Syndicate 271, Florida Insurance Guaranty Association, Intervenors,

Appeal of M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in Her Capacity as Rehabilitator for Villanova Insurance Company (In Rehabilitation)

M. Diane Koken, Insurance Commissioner of
the Commonwealth of Pennsylvania,

v.

Villanova Insurance Company,

Mutual Risk Management, Ltd. (MRM), Psychiatrists' Purchasing Group, Inc., American Airlines, Inc., Pulte Homes, Inc., Metro Atlantic Landscape and Turf Association (Malta), Florida Workers Compensation Guaranty Association, Lloyd's Syndicate 271, Florida Insurance Guaranty Association, Intervenors,

Appeal of M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in her Capacity as Statutory Liquidator for Villanova Insurance Company

M. Diane Koken, Insurance Commissioner,
Commonwealth of Pennsylvania,

v.

Legion Insurance Company,

Bensalem Township, Florida Workers Compensation Insurance Guaranty Association, Psychiatrists' Purchasing Group, Inc., Pulte Homes, Inc., American Airlines, Inc., Rural/Metro Corporation, Daniel Elrod, Shirley Elrod, Metro Atlanta Landscape and Turf Association (Malta), Kerry Kessler, Atwood Oceanics, Inc., Mutual Risk Management, Ltd. (MRM), Joseph McIntyre, Randstad North America, L.P., Florida Insurance Guaranty

Association, Intervenors,

Appeal Of M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in her Capacity as Rehabilitator for Legion Insurance Company (In Rehabilitation)

M. Diane Koken, Insurance Commissioner, Commonwealth of Pennsylvania,

v.

Legion Insurance Company,

Bensalem Township, Florida Workers Compensation Insurance Guaranty Association, Psychiatrists' Purchasing Group, Inc., Pulte Homes, Inc., American Airlines, Inc., Rural/Metro Corporation, Daniel Elrod, Shirley Elrod, Metro Atlanta Landscape and Turf Association (Malta), Kerry Kessler, Atwood Oceanics, Inc., Mutual Risk Management, Ltd. (MRM), Joseph McIntyre, Randstad North America, L.P., Florida Insurance Guaranty Association, Intervenors,

Appeal of M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in her Official Capacity as Statutory Liquidator ("Liquidator") for Legion Insurance Company ("Legion").

Supreme Court of Pennsylvania.

Argued March 8, 2005.

Decided July 19, 2005.

Amy L. Weber, Esq., David L. Bricker, Esq., Harrisburg, for M. Diane Koken.

Ann B. Laupheimer, Esq., Gregg W. Mackuse, Esq., David Michael Laigaie, Esq., Daniel J. McGravey, Esq., Jerome J. Shestack, Esq., Charles Mikell Hart, Esq., Jerome R. Richter, Esq., David F. Girard diCarlo, Esq., Gregory P. Miller, Esq.,

Leslie Anne Miller, Esq., Joseph Colin Crawford, Esq., Gaetan J. Alfano, Esq., Philadelphia, for M. Diane Koken, as Rehabilitator for Villanova Insurance Co.

Mary A. Lopatto, Esq., Washington, District of Columbia, for amicus curiae Certain Underwriters at Lloyd's, London.

Kathryn Lease Simpson, Esq., Harrisburg, for amicus curiae UnionAmerica Insurance Company, LTD.

Marianne Bessey, Esq., Franklin D. O'Loughlin, Esq., *pro hac vice*, Reading, for amicus curiae National Organization of Life and Health Insurance Guaranty Associations.

Gerald E. Arth, Esq., Philadelphia, for amicus curiae National Association of Insurance Commissioners.

Matthew T. Wulf, Esq., *pro hac vice*, for amicus curiae Reinsurance Association of America.

Teresa L. Jakubowski, Esq., Washington, District of Columbia, for amicus curiae American Council of Life Insurers.

Kathryn Lease Simpson, Esq., Harrisburg, for amicus curiae Transatlantic Reinsurance Company.

Paul M. Hummer, Esq., Philadelphia, for Villanova Insurance Company.

Robert L. Roth, Esq., Washington, District of Columbia, for amicus curiae American Psychiatric Association.

Claudine Q. Homolash, Esq., Eugene Anderson, *pro hac vice*, Philadelphia, for amicus curiae United Policyholders of America.

James Reeves Potts, Esq., Philadelphia, for Florida Workers Compensation Guaranty Ass'n. and Florida Insurance Guaranty Ass'n.

Christopher E. Martin, Esq., Terrence P. Cummings, Esq., *pro hac vice*, Michael D. Brown, *pro hac vice*, for Psychiatrists' Purchasing Group Inc.

Timothy Patrick Law, Esq., John N. Ellison, Philadelphia, for Pulte Homes Inc.

Richard F. McMenamin, Esq., James Edmond DelBello, Jr., Esq., Jay H. Calvert, Jr., Esq., Philadelphia, for American Airlines.

Helen Louise Gemmill, Esq., Kandice J. Giurintano, Esq., Harrisburg, for Lloyd's Syndicate 271.

Heather Elizabeth Rennie, Esq., Ursula A. Siverling, Esq., Heidi B. Hamman Shakely, Esq., Richard T. Schadle Doherty, Esq., Philadelphia, for Metro Atlanta Landscape and Turf Association (MALTA) and Randstad North America, L.P.

David R. Moffitt, Esq., Philadelphia, for Rural/Metro Corporation.

Ann B. Laupheimer, Esq., Douglas Y. Christian, Esq., Gregg W. Mackuse, Esq., David Michael Laigaie, Esq., Daniel J. McGravey, Esq., Jerome J. Shestack, Esq., Charles Mikell Hart, Esq., Gregory P. Miller, Jr., Jerome R. Richter, Esq., David F. Girard diCarlo, Esq., Leslie Anne Miller, Esq., Joseph Colin Crawford, Esq., Gaetan J. Alfano, Esq., Philadelphia, for M. Diane Koken, in her capacity as Statutory Liquidator for Legion Ins. Co.

Marianne Bessey, Esq., Franklin D. O'Loughlin, Esq., *pro hac vice*, Joel A. Glover, Esq., *pro hac vice*, Reading, for National Organization of Life and Health Insurance Guaranty Associations.

Paul M. Hummer, Esq., Philadelphia, for Legion Insurance Co.

Joseph Barry Sobel, Esq., Harrisburg, for Kerry Kessler.

Barbara Mary Kirk, Esq., Trevose, for Bensalem Township.

James Reeves Potts, Esq., Michael F. Consedine, Esq., Philadelphia, for Florida Workers Compensation Insurance Guaranty Association.

Paula Jane McDermott, Esq., Camp Hill, for Daniel Elrod.

Thomas A. Beckley, Esq., Harrisburg, for Atwood Oceanics, Inc.

Ann B. Laupheimer, Esq., Gregg W. Mackuse, Esq., David Michael Laigaie, Esq., Daniel J. McGravey, Esq., Jerome J.

Shestack, Esq., Charles Mikell Hart, Esq., Jerome R. Richter, Esq., David F. Girard diCarlo, Esq., Gregory P. Miller, Esq., Leslie Anne Miller, Esq., Joseph Colin Crawford, Esq., Gaetan J. Alfano, Esq., Philadelphia, for M. Diane Koken, as Rehabilitator for Legion Ins. Co.

Amy L. Weber, Esq., David L. Bricker, Esq., Harrisburg, for Department of Insurance.

Ann B. Laupheimer, Esq., Gregg W. Mackuse, Esq., David Michael Laigaie, Esq., Daniel J. McGravey, Esq., Jerome J. Shestack, Esq., Charles Mikell Hart, Esq., Jerome R. Richter, Esq., David F. Girard diCarlo, Esq., Gregory P. Miller, Esq., Leslie Anne Miller, Esq., Joseph Colin Crawford, Esq., Gaetan J. Alfano, Esq., Jerome J. Shestack, Philadelphia, for M. Diane Koken, in her capacity as Statutory Rehabilitator for Villanova Ins. Co.

Heather Elizabeth Rennie, Esq., Ursula A. Siverling, Esq., Heidi B. Hamman Shakely, Esq., Richard T. Schadle Doherty, Esq., Philadelphia, for Metro Atlanta Landscape and Turf Association ("MALTA").

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### ORDER

PER CURIAM.

**AND NOW,** this 19th day of July, 2005, the order of the Commonwealth Court is hereby AFFIRMED, on the basis of the Commonwealth Court opinion, *Koken v. Legion Ins. Co.*, 831 A.2d 1196 (Pa.Cmwlth.2003).

NEWMAN files a dissenting statement in which Justice CASTILLE joins.

In these consolidated proceedings, M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in her official capacity as Rehabilitator and Liquidator for both Villanova Insurance Company (Villanova) and Legion Insurance Company (Legion), appeals the Orders of the Commonwealth Court dated June 26, 2003, and July 25, 2003, which

directed the liquidation of both insurance companies and granted certain corporate policyholder intervenors direct access to the insurance companies' reinsurance [1] contracts. Because I believe that the Commonwealth Court erred in granting these corporate policyholder intervenors direct access to the reinsurance proceeds of Villanova and Legion, I must respectfully dissent.

## FACTS AND PROCEDURAL HISTORY

The factual findings of the Commonwealth Court establish that Legion and Villanova are property and casualty insurers organized pursuant to the laws of the Commonwealth. At the time of the filing of the present litigation, both Legion and Villanova were in financial distress because of the failure of reinsurers to reimburse these property and casualty insurers for claims already paid out to a number of insureds.[2] As a result, on March 28, 2002, the Insurance Commissioner petitioned the Commonwealth Court, seeking to place Legion and Villanova in statutory rehabilitation pursuant to Section 515 of the Insurance Department Act, 40 P.S. § 221.15.[3] The Commonwealth Court complied with the request of the Insurance Commissioner and entered Orders placing both insurers in statutory rehabilitation. Pursuant to Section 516(b) of the Insurance Department Act, 40 P.S. § 221.16(b), the Insurance Commissioner, acting as the statutory Rehabilitator, assumed

1. Reinsurance is defined as "[i]nsurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange for a percentage of the original premium." BLACK's LAW DICTIONARY 1290 (7th ed.1999).

2. According to the Commonwealth Court, as of June 30, 2002, overdue reinsurance receivables to Villanova and Legion exceeded three hundred million dollars.

3. Section 515(a) of the Insurance Department Act states:
   The commissioner may apply by petition to the Commonwealth Court, for an order authorizing him to rehabilitate a domestic insurer or an alien insurer domiciled in this Commonwealth, alleging that the insurer has committed one or more acts which may constitute grounds for rehabilitation as set forth in section 514 of this article.
   40 P.S. § 221.15(a).

the power to collect overdue and future reinsurance proceeds on behalf of the insurers.[4]

Unfortunately, rehabilitation of Villanova and Legion proved futile.[5] Therefore, on August 29, 2002, the Rehabilitator again petitioned the Commonwealth Court, this time seeking statutory liquidation of Legion and Villanova pursuant to Section 520 of the Insurance Department Act, 40 P.S. § 221.20.[6]

Meanwhile, on September 11, 2002, while the petition seeking liquidation was pending, Mutual Risk Management, Ltd. (MRM), the parent corporation of Legion and Villanova, was permitted to intervene in opposition to liquidation. Specifically, MRM argued that Legion and Villanova should remain in statutory rehabilitation because both insurers, upon collecting their overdue and projected future reinsurance payments, would be capable of paying all valid policyholders the full amount of their unpaid claims. Five months later, on February 11, 2003, the Commonwealth Court also allowed four corporate policyholders to intervene. During the course of several evidentiary hearings, each of these corporate policyholders—which included Pulte Homes, Inc. (Pulte), Psychiatrists' Purchasing Group (PPG), Rural/Metro Corporation

4. Section 516(b) of the Insurance Department Act provides:
   The rehabilitator may take such action as he deems necessary or expedient to correct the condition or conditions which constituted the grounds for the order of the court to rehabilitate the insurer. He shall have all the powers of the directors, officers and managers, whose authority shall be suspended, except as they are redelegated by the rehabilitator. He shall have full power to direct and manage, to hire and discharge employes subject to any contract rights they may have, and to deal with the property and business of the insurer. 40 P.S. § 221.16(b).

5. During the five-month period that Villanova and Legion were in statutory rehabilitation, the Rehabilitator paid only the most urgent insured claims, thereby failing to pay other valid policyholder claims totaling approximately twenty-six and a half million dollars per month.

6. According to Section 520(a) of the Insurance Department Act:
   The commissioner may apply by petition to the Commonwealth Court for an order directing him to liquidate a domestic insurer, domiciled in this Commonwealth, alleging that the insurer has committed one or more acts which may constitute grounds for liquidation as set forth in sections 514 and 519 of this article. 40 P.S. § 221.20(a).

(Rural/Metro), and American Airlines (American)—presented evidence attempting to show that standard statutory liquidation would be detrimental to its interests and, therefore, all reinsurance proceeds should be paid directly to the insureds instead of being paid to the estates of the insurers.

By published Opinion and Order dated June 26, 2003, the Commonwealth Court determined that the liquidation of Villanova and Legion was an appropriate remedy and that any further attempts at rehabilitation should end. *Koken v. Legion Ins. Co.*, 831 A.2d 1196 (Pa.Cmwlth.2003). Expressly, the court determined that the Rehabilitator had carried her burden of proof by showing that the insurers were insolvent and that "continued rehabilitation would 'substantially increase the risk of loss to creditors, policy and certificate holders, or the public, or would be futile.' " *Id.* at 1230 (quoting 40 P.S. § 221.18(a)). Thus, the Commonwealth Court placed Villanova and Legion in statutory liquidation and appointed the Insurance Commissioner as Liquidator.

After determining that the insurers should be placed in statutory liquidation, the Commonwealth Court then addressed the issues surrounding the payment of reinsurance proceeds. Initially, the court noted that Legion and Villanova principally operated as "fronting companies." The court explained that, as "fronting companies," Legion and Villanova issued insurance polices that were primarily reinsured by other insurers and, therefore, the companies assumed neither risk nor administrative functions on behalf of the insureds. As such, the Commonwealth Court refused to allow any reinsurance proceeds to become general assets of the estates of Legion and Villanova, unlike the case of a standard liquidation.

The Commonwealth Court recognized that, in a standard liquidation, an insured is not entitled to receive payments directly from a reinsurer; nevertheless, the court acknowledged that the policyholder would receive money for unpaid claims sometime in the future. In the interim, claims of policyholders would be transferred to state guaranty funds for payment. Because the four corporate policyholder interve-

nors in this case showed that they would be harmed by the undue delay inherent in this standard liquidation process, the Commonwealth Court instead granted them direct access to the available reinsurance proceeds.

In granting the corporate policyholder intervenors the right to access the reinsurance funds directly, the Commonwealth Court explained that such a right is to be established individually, on a case-by-case basis. Applying this approach, the court examined each individual corporate policyholder intervenor separately to determine whether the insured could bring a direct action against the reinsurer as a third-party beneficiary of the reinsurance contract. The court concluded that all four of the corporate policyholder intervenors in this case were entitled to direct access to reinsurance proceeds based upon their respective third-party beneficiary status.

On July 25, 2003, after the Rehabilitator failed to file a formal Order of Liquidation as directed by the court, the Commonwealth Court entered its own Order of Liquidation for Legion and Villanova. This Liquidation Order incorporated the June 26, 2003 Order and, in addition, established a procedure by which other policyholders demonstrating third-party beneficiary rights could assert a right to direct access of reinsurance funds.

Thereafter, the Liquidator appealed the Orders of June 26, 2003, and July 25, 2003 to this Court. On direct appeal, the Liquidator does not challenge the placement of Legion and Villanova into statutory liquidation. Rather, the Liquidator argues that the Commonwealth Court erred in allowing the corporate policyholder intervenors direct access to the insurers' reinsurance proceeds based upon their alleged third-party beneficiary status.

## DISCUSSION

On appeal, the Liquidator contends that the corporate policyholder intervenors should not have been granted exclusive rights to the insolvent insurers' reinsurance funds because these policyholders never contracted for such direct access in

the event of insolvency. Rather, the Liquidator asserts that, pursuant to Section 534 of the Insurance Department Act, 40 P.S. § 221.34, any outstanding reinsurance proceeds should have been paid directly to the estates of the insolvent insurers for the common benefit of all insureds. I agree.

It is well established that a reinsurer is generally liable only to the primary insurer, and not the insured. *Appeal of Goodrich,* 109 Pa. 523, 2 A. 209, 211 (1885). When an insurer has the subject matter of the insurance reinsured to him by another, there is "no privity between the original insured and the reinsurer; the latter is in no respect liable to the former as a surety or otherwise; the contract of insurance and of reinsurance being totally distinct and disconnected." *Id.* However, an exception to this general rule has developed at common law such that an insured may bring a direct action against a reinsurer where the insured is deemed to be a third-party beneficiary of the reinsurance contract. *Reid v. Ruffin,* 503 Pa. 458, 469 A.2d 1030, 1032 (1983).

In granting the corporate policyholder intervenors direct access to the reinsurance funds of Legion and Villanova, the Commonwealth Court applied this common law exception. Specifically, the court determined that the relationships and interactions between the reinsurers and the corporate policyholder intervenors evidenced an intent that these insureds were, in fact, third-party beneficiaries of the reinsurance contracts. However, in applying this common law exception, the Commonwealth Court disregarded the additional legislative commands found in Section 534 of the Insurance Department Act, namely that the express terms of the reinsurance contract reflect any third-party beneficiary rights.

Section 534 of the Insurance Department Act—which addresses a reinsurer's liability to an insolvent insurer in liquidation—provides that

The amount recoverable by the liquidator from reinsurers shall not be reduced as a result of delinquency proceedings, regardless of any provision in the reinsurance contract or other agreement. Payment made directly to an insured or

other creditor shall not diminish the **reinsurer's obligation to the insurer's estate except when the reinsurance contract provided for direct coverage of an individual named insured** and the payment was made in discharge of that obligation.

40 P.S. § 221.34 (emphasis added). As this statutory language explains, reinsurance funds are a general asset of the insolvent insurer's estate and, therefore, a reinsurance company is obligated to pay any reinsurance proceeds directly to the insurer's estate for the benefit of all insureds. However, Section 534 provides an exception to this general rule, allowing payment of reinsurance proceeds directly to the policyholder where "the reinsurance contract provided for direct coverage of an individual named insured[.]" *Id.* According to this legislative provision, an insured is not entitled to direct access to reinsurance proceeds unless the reinsurance contract expressly sets forth such third-party rights. Therefore, absent an express provision in the reinsurance contract that clearly imparts direct payment to a named third-party beneficiary in the event of insolvency, Section 534 requires all reinsurance proceeds to be paid directly to the estate of the insolvent insurer for the benefit of all policyholders. *Id.*

Here, none of the reinsurance contracts at issue contain an express provision conferring third-party beneficiary status on any of the corporate policyholder intervenors seeking direct access to reinsurance funds. As the Liquidator points out, all of the corporate policyholder intervenors in this matter are sophisticated business entities who are familiar with the language contained in typical reinsurance agreements. As such, these knowledgeable policyholders were fully capable of protecting their own interests by negotiating to include a provision in the terms of the reinsurance contract expressly granting direct access to reinsurance funds. In particular, the corporate policyholders could have contracted for the inclusion of a "cut-through" provision in the language of the reinsurance agreement, which would have eliminated payments to the primary insurer and, instead, provided direct payments from the reinsurer to the insured. Nevertheless, none of the

reinsurance agreements in this matter contained such a straightforward "cut-through" provision.

As detailed above, unless the express terms of a reinsurance contract provide for the payment of reinsurance proceeds directly to a named insured, Section 534 dictates that the liability of the reinsurer is intended to run to the estate of the insolvent insurer for the benefit of all insureds. Here, the reinsurance contracts lacked precise language conferring third-party beneficiary status upon any of the corporate policyholder intervenors. Absent such unambiguous contractual language, the insureds in this matter should not have been permitted to circumvent the statutory mandate of Section 534 by simply declaring, via parol evidence, that they were third-party beneficiaries of the reinsurance contracts.[7] Instead, the corporate policyholder intervenors should have been directed to do what is required of all other insureds, namely to pursue collection of the reinsurance proceeds by filing a claim with the Liquidator in accordance with the liquidation provisions of the Insurance Department Act, 40 P.S. §§ 221.37–221.44. Accordingly, I believe that the Commonwealth Court erred in granting the corporate policyholder intervenors direct, preferential access to reinsurance proceeds at the expense of other policyholders and claimants.

## CONCLUSION

Based on the foregoing, I believe that the Commonwealth Court erred in allowing the corporate policyholder intervenors in this case direct access to the reinsurance proceeds of Villanova and Legion. Because Section 534 of the Insurance Department Act explicitly prohibits an insured from obtaining direct access to reinsurance funds absent express language in the provisions of the reinsurance contract, I believe that we

7. The Commonwealth Court attempted to differentiate Legion and Villanova from other typical insurers by labeling them merely "fronting companies," who assumed little or no risk. However, Section 534 of the Insurance Department Act neither discerns between nor discriminates against insolvent insurers because of their "fronting" nature. *See* 40 P.S. § 221.34.

412

must reverse the Orders of the Commonwealth Court to the extent that they permit such erroneous direct access.

Justice CASTILLE joins this dissenting statement.